DETERMINED IN

# THE SUPREME COURT

OF THE

## TERRITORY OF NEW MEXICO.

### JANUARY TERM, 1875.

---

## ELIZA W. EDGAR AND JAMES M. EDGAR *v.* QUIRINA BACA AND FILOMENO GALLEGOS.

MORTGAGE BY FEME-COVERT, WHEN VOID.—A mortgage executed by a wife of her realty, without her husband joining therein as required by statute, is void and can not be enforced at law, or in equity, though at the time of its execution she was living apart from her husband under an agreement with him that she was to have the entire management and disposal of her property.

ESTOPPEL TO DEMAND AN ACCOUNT BETWEEN PARTNERS.—The heirs of a deceased partner are estopped from demanding an accounting upon a bill filed against the surviving partner, where it is alleged in the bill that the partners had a settlement of their partnership accounts before the decedent's death, whereby a certain balance was found due the decedent.

APPEAL from the district court of Santa Ana county. The opinion states the case.

*T. F. Conway,* for the appellants. The defendants and appellees, Quirina Baca and Filomeno Gallegos, husband and wife, some time in the year 1854 or 1855, separated under articles of agreement, made in writing and solemnly executed. By said articles of separation, Filomeno renounced all his marital rights in and to the property of Quirina, brought by her into the marriage community, and

set the same apart for her sole and separate use, and subject to her sole and separate control, without any let or hindrance whatever from her said husband. By said articles Filomeno further renounced all his rights as a married man to any property his said wife might acquire, and that she should have the same to her sole and separate use, and subject to her sole control, and that she should in every way act as a *feme-sole*. Quirina then assumed her maiden name and operated as a *feme-sole* entirely beyond the control of her said husband, who lived in a different county, and in conformity with the articles of separation had no communication whatever with her. Quirina, thus operating as a *feme-sole* twelve years, acquired in 1867, by purchase, a certain house and lands, taking the deeds in her maiden name, and took possession of the same. In the last-mentioned year, about the time of the purchase, Quirina enters into copartnership with one J. L. Collins, for the purpose of carrying on a stage agency, government forage agency, and general hotel business, on the property last above mentioned; she then sells and transfers by deed to the said Collins, for a valuable money consideration, a one undivided half interest in the said last-mentioned property, acknowledges the deed as a *feme-sole*, and the deed is recorded in the records of Santa Ana county, where the property is situated. Collins then takes possession as a full partner and equal owner with the said Quirina in the said property. Quirina then agrees with Collins, if he will put their said property into good repair and furnish the means for carrying on their copartnership business, she will be responsible for and pay to him one half of the outlay. Collins makes the outlay, and the copartnership is carried on.

On the first day of May, 1869, an account was had between said copartners of the partnership affairs. It was then found that the said Collins had furnished, laid out, and expended, under the above agreement, the sum of eight thousand five hundred and fifty-nine dollars and sixty-three cents. Quirina, being responsible for half of said outlay, four thousand two hundred and seventy-nine dollars and eighty-one cents, was found to have paid to Collins only

two thousand four hundred and eight dollars and seventy-five cents, leaving a balance of one thousand eight hundred and seventy-one dollars and six cents still due. Quirina, in order to secure to Collins the payment of said last-mentioned sum or balance due, mortgaged to the said Collins her undivided half interest in the real estate and personal property at that time belonging to the copartnership. Exhibit A, page 16 of transcript of record in this case, shows deed from Quirina Baca to Collins. Exhibit B, page 19, same, shows settlement of accounts as well as the mortgage above referred to. Exhibit B also shows that during the copartnership and before the settlement of accounts, Collins had turned into the copartnership, a house and land valued at one hundred and sixty dollars. No deed of transfer, however, was made by him to the copartnership.

J. L. Collins died on the fifth or sixth of June, 1869. Eliza A. Edgar, his sole heir and devisee, entitled to the properties, rights, effects, and credits of the said Collins, files the bill herein, jointly with her husband, to obtain a settlement of the copartnership business, a partition of the real property belonging to the same; subject to the mortgage and also to foreclose said mortgage. A demurrer was filed by defendants to the bill herein: See transcript of record, p. 40. A decree was rendered dismissing the bill, from which plaintiffs appeal, and the case is brought here for adjudication.

It can not be denied that the property transferred, as well as the property mortgaged by Quirina to Collins, was her separate property. A portion of the property mortgaged was personal property, and it being the separate property of a *feme-covert*, subject to her sole control, equity will support her contracts in reference to the same, especially where they indicate a clear intention to bind said property. The legal title to a part of the copartnership real estate, turned in by Collins, remains in him or his heirs; the title to one half the same in Quirina is only an equitable title, and a court of equity only can compel a settlement of the interests.

The transfer by Quirina to Collins of the half interest in

the real estate and the mortgage made by her of the other half interest, being for valuable considerations, are good, although her husband failed to join with her in the execution of the deed and mortgage. The real estate having been acquired by Quirina while operating as a *feme-sole* under articles of separation from her husband, she had, under said articles, and under the rights she had over her separate property, subject to her sole control, full authority to sell or mortgage it, more especially when the contracts were made for the benefit of her said separate estate. Post-nuptial agreements, in view of a voluntary separation, will be upheld in equity: Tyler on Inf. & Cov., 469, 471, 480, 483; 2 Story Eq. Jur., sec. 1372; 2 Roper on Hus. & Wife, 304, 305. Agreement as to separate trade: Tyler, 483, 484, 494, 496, 507. Desertion: Id. 486; 43 Mo. 39; 4 Metc. 478. How husband may divest himself of property: Tyler, 490; 2 Story Eq. Jur., 1386, 1387; 17 Tex. 613, 616; 5 Id. 507. Power of wife over community property when abandoned by husband: 18 Id. 3, 12; Freeman on Co-tenancy and Partition, 148; 10 Tex. 130. Acts of *feme-covert* for benefit of separate estate: 7 Paige Ch. 112; Tyler, 442, 444, 446, 447; 2 Story Eq. Jur., 1378, 1379, 1397, 1399, 1401, note; 5 Am. Rep., 675; 2 Roper Hus. & Wife, secs. 253, 255, 289. Real estate accruing after marriage: Id., secs. 181, 184, 229, 234, 239, 248. Rights of *feme-covert* to act as *feme-sole* when separate from husband: 16 Ill. 277; Parsons on Partnership, 234. Separate estate of *feme-covert* in equity: Tyler, 507; 10 Paige Ch. 256; 4 Barb. 407; *Insurance Company* v. *Bay*, 4 N. Y. 9, 278; 3 Johns. Ch. 88, 89; Clancy Hus. & Wife, 272, 285, 286, 287, 289, 290, 293, 314. Private examination: 4 N. Y. 27, 28; Raym. Dig., 109, 318, 322, 333.

*S. B. Elkins*, for the appellees. By the principles of the common law, a married woman can do no act to bind her. Her position is not like that of other disabled persons. Her acts are absolutely void: *Elliott* v. *Peirsol*, 1 Pet. 338; 7 Cur. 606. Our statutes regulate and prescribe the mode in which a *feme-covert* may convey her real estate: Secs. 5, 9, 10. In order for a married women effectually to convey her real es-

tate, she must conform strictly to the statute: Tyler on Inf. and Cov. 315, citing 7 Ohio St. 432; also 13 Id. 505; 2 Kent Com., 6th ed., 154; 1 Pet. 109; 7 Curt. 481; Tyler on Inf. and Cov. 505; *Maclay* v. *Love*, 25 Cal. 367; *Ewald* v. *Corbett*, 32 Id. 497; 16 Id. 550.

By Court, JOHNSON, J.:

The appellants brought their bill against respondents in the district court for Santa Ana county, at April term, 1872, said respondents being Quirina Baca and Filomeno Gallegos, her husband, and the appellants (complainants in the court below), being the daughter and heir of James L. Collins, deceased, late of Santa Fe county, and her husband, James M. Edgar. Complainants allege that Quirina Baca, then being owner of certain real estate in Santa Ana county, now known as La Bajada rancho, by her deed dated the twenty-fifth of February, 1867, conveyed to said Collins the undivided half of all of said property. 2. That at the time of the transactions set forth in the bill, and for several years prior to the commencement thereof with said Collins, said Quirina Baca was and had been living separate and apart from Gallegos, her said husband, who had "agreed and consented that his said wife, Quirina Baca, should have the entire management, control, and disposition of all her own individual property, without any let, hindrance, or molestation on the part of him, the said Filomeno Gallegos, and therefore in accordance with the terms of said undertaking refrained from and withdrew from all connection with any of the business or property of the said Quirina Baca, and from that time until after the death of the said James L. Collins, lived separate and apart from the said Quirina Baca, and in another county than that in which she lived." 3. That in May, 1869, Quirina and Collins had a settlement of their partnership accounts, ascertaining a balance due from her to Collins of one thousand eight hundred and seventy-one dollars and six cents, to secure which she then gave to Collins a mortgage on the remaining undivided one half of the said real estate, household and kitchen furniture, live stock, etc.

Complainants prayed the court to decree a partition of the said real estate and personal property between them and the respondents; to appoint a commission to take an account between complainants and respondents, and to decree a foreclosure of the mortgage and sale of respondent's half of said real estate, live stock, etc., and to pay such amount as may be found to be due on account, etc., from respondents to complainants.

Respondents demurred to the bill, alleging the following grounds of demurrer: 1. Said bill does not show any title in or conveyance to said Collins, of the real estate mentioned therein by the said Quirina Baca. 2. Said bill by its terms vests the title of Collins to the real estate on a verbal agreement, which agreement, so far as it affects real estate, is null and void. 3. Said bill alleges a conveyance. by the defendants to said Collins, which was not joined in by her husband, and attempts to claim title from this conveyance by another allegation to the effect that by an agreement the said defendants were living apart, and by the terms thereof said Quirina Baca had the right to transact business solely, but fails to allege that she had the right and power, by the terms of said agreement, to sell and convey real estate without the consent of her husband. 4. Said bill is multifarious in this, it seeks to settle a copartnership, set aside conveyances, and foreclose a mortgage. 5. The paper purporting to be a mortgage, and which it is sought to foreclose, is not a mortgage by its terms.

On the twenty-third of October, 1873, the court below made a decree sustaining the respondent's demurrer and dismissing the complainants' bill with costs in favor of respondents. And from this decree complainants bring their appeal.

In this court, at the argument, the position most strongly insisted upon, if not exclusively, by the appellants, is that their bill shows sufficient ground for a court of equity to make the decree prayed for, touching the real estate at least. They insist that, the statutes of this territory to the contrary notwithstanding, a wife living separate and apart from her husband can convey or mortgage her real estate ab-

solutely, without the concurrence or joinder of her husband, in the deed of conveyance or mortgage; and in support of their position cite authorities which would be conclusive in this court were the law of this territory similar to the law of the states in which the decisions quoted were rendered.

The material portions of the law of this territory relative to conveyances of real estate are embraced in chapter 44 of the Revised Statutes. Section 1 of this chapter says: "Any person or persons, or body politic, holding, or who may hold, any right or title to real estate in this territory, be it absolute or limited, by possessions, in part payment or transfer, may convey the same in the manner and subject to the restrictions prescribed in this act."

The effect of this language is such—so restrictive—that any writing affecting real estate, in law or equity, is of force, or valuable, so far only as it may be in accordance with the requirements of the statute; and of course, if such writing do not conform to the requirements of the statute, it has no force, and is valueless. Section 9 of the same chapter says: "Any married woman may convey her real estate, by any conveyance executed by herself and her husband, and shall be acknowledged as a married woman, and certified to in the manner hereinafter prescribed;" and sections 10, 11, 12, and 13 contain the further legal requisites to render valid a conveyance of her real estate by a married woman.

The statutory provisions have existed since January 12, 1852. Judging from their context, the intention of the legislature which enacted them was to prevent husbands from squandering the real estate of their wives; but facts occurring in several parts of this territory have demonstrated their adaptability for the protection of the real property of married women against the rapacity of others as well. The term "married woman" in these statutory provisions has no different sense from that in which it is understood in any other civilized community, and that is the legal sense. When a woman is joined with a man in wedlock, performed by either clergyman or civil officer, she becomes a married woman in law, and remains so in contemplation of law until the death of herself or husband, or until they be divorced

by the decree of a court of competent jurisdiction; and she remains, until such separation take place, subject to all the liabilities and disabilities touching her person and estate, which the law may prescribe. Here the statute prescribes that she may convey her real estate, in a certain manner and form, and by its phraseology implies disability on her part to convey it in any other manner and form.

No agreement, verbal or written, between her and her husband, can avoid the provisions of the statute in the premises, any more than the adverse acts of persons can nullify any other positive rule of law; and this, for two very simple reasons: 1. The power which enacts a law is the only one competent to annul, repeal, or modify its provisions; and, 2. Husband and wife, being one person in law, are incompetent to make a valid contract of the kind alleged by the complainants. It has long been settled that courts of equity may enforce the specific performance of a valid contract, afford a party redress for a wrong when the common law affords him no remedy, etc., but the equity jurisdiction of the court below or of this court is not sufficient to enforce a contract contrary to law, or to afford a remedy against law.

As to the matter of a commission to take account of the copartnership between the respondent, Quirina Baca, and James L. Collins, deceased, prayed for by the complainants, they estop themselves by their own allegation that there had been a settlement of copartnership accounts by the copartners themselves, a short time previous to Collins' death; and if there was anything due at that time from Quirina to Collins, Collins' legal representatives had a remedy at common law, to judgment at least.

It would be supererogatory to discuss now the multifariousness of the bill alleged in the demurrer. The judgment and decree of the court below is affirmed.

BRISTOL, J., concurred in the affirmance.